Filed 9/14/20  P. v. Hallman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073456 |
| v. | (Super.Ct.No. FWV01095) |
| EDWARD EDDIE HALLMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bridgid M. McCann, Judge.  Reversed and remanded with directions.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis, and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

In 1993, defendant and appellant Edward Eddie Hallman, who was then a minor, along with his two adult coparticipants, attempted to rob a jewelry store. During the robbery, one of defendant's coparticipants shot and killed the store's owner. A jury convicted defendant of first degree murder (Pen. Code,[1] § 187, subd. (a)) and five other felonies. He was sentenced to a determinate term of four years eight months and an indeterminate term of 26 years to life in prison.

In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 (Senate Bill 1437), legislation that prospectively amended the mens rea requirements for the offense of murder and restricted the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine. (Stats. 2018, ch. 1015, § 4.) Senate Bill 1437 also established a procedure permitting certain qualifying persons who were previously convicted of felony murder or murder under the natural and probable consequences doctrine to petition the courts that sentenced them to vacate their murder convictions and obtain resentencing on any remaining counts. (*Ibid*.; see § 1170.95)

In 2019, defendant filed a petition for resentencing under section 1170.95. Without reaching the merits of the petition, the trial court granted the People's motion to strike defendant's petition for resentencing, finding Senate Bill 1437 unconstitutional.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

Defendant appeals from the order granting the People's motion to strike his petition to vacate his murder conviction and obtain resentencing under the procedures established by Senate Bill 1437. Defendant argues the trial court erred in finding Senate Bill 1437 unconstitutional. The People agree and also assert that because the record establishes defendant is entitled to relief, the matter should be remanded with directions to grant the petition, vacate defendant's murder conviction, and resentence him on the remaining counts. We agree. We therefore reverse the trial court's order and remand the matter for further proceedings.

II

FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 11, 1993, the defendant met with 24-year-old George Wiley and 21-year-old Marvin Foster at Foster's home in Los Angeles for the purpose of making plans for the robbery of Diamond Expressions Jewelry Store in Upland. Foster and defendant smoked some PCP before leaving for Upland.

On May 11, 1993, Donna Smith, an employee, and Victor Angona, the owner of Diamond Expressions Jewelry Store, were in the office area of the store around 10:00 a.m. A two-way mirror separates the display area from the office area. There is also a back room containing a safe.

---

[2] The factual background is taken from this court's nonpublished opinion in defendant's prior appeal, case No. E014974, which is part of the record on appeal. (*People v. Hallman* (Jan. 19, 1996, E014974) [nonpub. opn.].)

Wiley entered the store dressed as a postal worker. (Neither he, Foster, nor defendant were postal employees.) Angona, who was on the phone, handed it to Smith and said he would help the customer. Within about 30 seconds of Wiley's entry into the store, Foster entered. Foster was holding a handgun. Smith told the person she was talking to on the phone, "It's going down, call 911." She dove under a desk and hit the alarm button. She then heard voices and gunshots. Angona staggered into the office and said, "I am dead, you've killed me." Angona died from a gunshot wound to the chest.

The defendant entered after the shots were fired carrying pillowcases. He saw the mortally wounded Angona on the floor.

Then Smith was jerked from beneath the desk, a gun was placed to her head, and someone asked where the safe was. At that time, she observed two sets of feet and legs. She was dragged to where the safe was. It was open and empty as the merchandise had already been placed in the display cases. At that time, she saw three sets of feet and legs. Her head was held down as someone tried to place handcuffs on her. Suddenly, they stopped and ran out. She ran to the front of the store and observed a Bronco or Blazer-type vehicle driving away.

Shortly after the attempted robbery, Joe Candias was driving on San Antonio, in the vicinity of the jewelry store, when he noticed a gold Blazer two or three cars ahead of him. It abruptly pulled over cutting off a vehicle. He observed the three occupants of the Blazer run to a silver-gray Cadillac and drive off. His "conscience was bothering" him as to what was happening, so he turned his car around and drove back toward the area of the

4

car switch. As he did so he observed a police car "flying over the railroad tracks. . . ." He told the officers what he saw. Shortly thereafter, Candias was taken to where a Cadillac was stopped. There he identified the vehicle and the three occupants.

When the Cadillac was stopped by the police, Foster was driving. Defendant was in the right front seat, and Wiley was in the right rear seat. A postal worker's jacket and hat were found in the car along with two .38-caliber handguns. One of the guns had a spent cartridge. The other had three spent rounds. Defendant had a folded pillowcase in his pocket. A pair of handcuffs was in the trunk of the car.

Three pair of handcuffs and two more pillowcases were found at the scene of the crime. A .22-caliber handgun, belonging to Angona, was found on the floor of the office. Expert testimony established that this gun was malfunctioning. It would not fire and only clicked when the trigger was pulled.

Maria Rocha, an employee at a bakery next door to the jewelry store, identified Foster and defendant as two people she saw running from the store after she heard gunshots. Smith identified Wiley as the first person who entered the store and Foster as the second person to enter the store. She could not identify defendant.

After his arrest defendant was interviewed and told the detective that he had come from Los Angeles to commit a robbery, but he was not armed with a gun. He admitted that he knew the Blazer was stolen and was being used in the crime.

Foster also agreed to an interview. He told the detective that Wiley recruited him the day before the robbery attempt and told him that there would "be a 'lick' tomorrow

5

morning in Ontario." He expected the job to get him $3,000 to $5,000. Wiley provided him with the gun Foster carried into the attempted robbery. He told the detective that all three had contemplated doing the robbery stating, "We all in this." He drove the Blazer, which he picked up at Wiley's house, to Upland. Defendant rode with him while Wiley drove the Cadillac. The Cadillac was parked around the corner from the store, and then they all rode to the jewelry store in the Blazer.

Foster told the detective that Wiley entered the store first dressed as a postal worker. Thirty seconds after Wiley entered, Foster and defendant entered the store, and Foster had "his gun down." Defendant was not personally armed.

As soon as they entered the store, the murder victim, Angona, "drew heat." Foster stated that he did not fire at him but did point his gun at Angona who pointed his gun back at Foster and told him not to shoot because if he did, he would shoot Wiley. Foster stated that Wiley, who took a gun into the store, "[b]eat [Angona] to the draw or whatever. So I put my gun down, but then I heard POW." The only one who fired any shots was Wiley according to Foster.

Later, while Wiley and Foster were in their holding cells, they engaged in a conversation that was tape recorded. Foster told Wiley, "You shouldn't have shot him . . . ." Wiley responded, "It was self-defense, man." Foster responded, "No, not when you're doing no robbery. . . ." Wiley replied, "Well, it might be manslaughter, man."

6

While being transported from the police department to the jail, Wiley told Foster, "We really messed up, we're going to get the gas chamber or the electric chair. Which do you want?" Foster responded that he did not like the electric chair and expressed a preference for the gas chamber. Foster, displaying an unsettling, sophisticated knowledge of the Penal Code, then asked Wiley, "Are they going to charge us with 211 or just the 187?" He received no reply.

Foster was the only defendant to testify at trial. In a radical departure from what he told the detective following his arrest, he told the jury that, in effect, Wiley was an innocent agent in the attempted robbery, and Wiley had not been told there was going to be a robbery at the store. Wiley, then, was not a knowing participant in a burglary or the attempted robbery.[3] Foster testified that he committed the crime at the behest of a person named "Keevin" to whom he owed money and whom he feared. He owed Keevin $2,500 for cocaine, and if he did not pay it, Foster or a member of his family would die. Keevin suggested a robbery in order to repay the debt. Keevin suggested that Foster contact Wiley to act as a "decoy to buy [Foster] some time."

Foster testified that he contacted Wiley and told Wiley that Wiley was to participate in a drug deal, picking up a package from a jewelry store. The night before the attempted robbery Foster again met with Keevin who provided the Blazer, pillowcases, a gun, handcuffs, and directions. Foster knew that the Blazer was stolen because the steering column was ripped open. Foster claimed to have recruited defendant

---

[3] The prosecution relied only on the first degree felony-murder rule.

7

to participate in the planned robbery on the day of the crime. Foster specifically told defendant not to tell Wiley about the robbery.

After Angona was shot only defendant and Foster went to the back room area where the safe was located after they pulled Smith out from the desk. They left Wiley in the office area.

On February 18, 1994, a jury convicted defendant of first degree murder (Pen. Code, § 187; count 1); burglary (Pen. Code, § 459; count 2); two counts of attempted robbery (Pen. Code, §§ 664/211; counts 3 & 4); false imprisonment by violence (Pen. Code, § 236; count 5); and unlawfully taking or driving a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a); count 6). The jury also found true defendant was armed with a firearm in the commission of counts 2 through 5. The jury found not true the special circumstance allegation that the murder occurred during the commission of burglary and attempted robbery.

On July 11, 1994, the trial court sentenced defendant to a determinate term of four years eight months, to be followed by an indeterminate term of 26 years to life in prison.(CT 50-51}

On January 19, 1996, this court affirmed the lower court's judgment in its entirety.

On January 1, 2019, Senate Bill 1437 became effective (2017-2018 Reg. Sess.), which amended the felony-murder rule and the natural and probable consequences doctrine as it relates to murder. (See Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 also added section 1170.95, which allows those "convicted of felony murder or

murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).)

On January 28, 2019, defendant in propria persona filed a petition for resentencing pursuant to section 1170.95, requesting that his murder conviction be vacated based on changes to sections 188 and 189, as amended by Senate Bill 1437, and asking to be resentenced.

On March 26, 2019, the People filed a motion to strike defendant's petition based on the unconstitutionality of Senate Bill 1437 and resulting statutes.

On June 28, 2019, the trial court heard oral argument on defendant's petition for resentencing. The trial court granted the People's motion to strike defendant's petition, finding Senate Bill 1437 unconstitutional.

On August 15, 2019, defendant filed a notice of appeal from the trial court's order granting the People's motion to strike his section 1170.95 petition for resentencing.

III

DISCUSSION

Defendant contends that the trial court incorrectly concluded Senate Bill 1437 is unconstitutional. He also asserts that because the record establishes he was not the actual killer, did not act with an intent to kill, and was not a major participant in the offense who acted with a reckless indifference to human life, we must vacate his conviction and remand the matter to the lower court with directions to grant his section 1170.95 petition.

9

The People aptly agree that Senate Bill 1437 is constitutional. The People also concede we should remand the matter to the trial court with instructions to grant defendant relief under Senate Bill 1437.

A.    *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, "limit[ed] accomplice liability under the natural and probable consequences doctrine and the felony-murder rule." (*People v. Cruz* (2020) 46 Cal.App.5th 740, 755 (*Cruz*); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246 (*Lamoureux*); *People v. Munoz* (2019) 39 Cal.App.5th 738, 749, review granted Nov. 26, 2019, S258234.) Prior to Senate Bill 1437's enactment, under the felony-murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*Lamoureux*, at pp. 247-248; *People v. Chun* (2009) 45 Cal.4th 1172, 1182 (*Chun*).) "'The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life.'" (*Chun*, at p. 1184; *Lamoureux*, at p. 248.)

Similarly, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 248; *People v. Chiu* (2014) 59 Cal.4th

10

155, 161-162.) "'[B]ecause the nontarget offense [was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.'" (*People v. Flores* (2016) 2 Cal.App.5th 855, 867.)

Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the 'person was the actual killer'; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the 'person was a major participant in the underl[y]ing felony and acted with reckless indifference to human life.'" (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57 (*Cornelius*), review granted Mar. 18, 2020, S260410;[4] *People v. Tarkington* (2020) 49 Cal.App.5th 892, 896 (*Tarkington*), review granted Aug. 12, 2020, S263219; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325-326, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

---

[4] Under California Rules of Court, rule 8.1115, we may rely on cases pending before the Supreme Court as persuasive authority while review is pending. (Cal. Rules of Court, rule 8.1115(e)(1), eff. July 1, 2016.)

11

Senate Bill 1437 also added section 1170.95, which permits persons convicted of murder under a felony murder or natural and probable consequences theory to petition in the sentencing court for vacation of their convictions and resentencing. Section 1170.95 provides in pertinent part: "A person convicted of felony murder or murder under a natural and probable consequences theory" may file a petition "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

B.    *Constitutionality of Senate Bill 1437*

Subsequent to the trial court's ruling in this matter, numerous appellate courts have rejected challenges to Senate Bill 1437's constitutionality, and the parties agree it is constitutional. (See *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 275, 286 [Senate Bill 1437 did not unconstitutionally amend Propositions 7 or 115, because it neither added to, nor took away from, those initiatives]; *Lamoureux*, *supra*, 42 Cal.App.5th at pp. 246, 251-252, 256-257, 264-266 [Senate Bill 1437 did not improperly amend Propositions 7 or 115 or the Victims' Bill of Rights Act of 2008 (Marsy's Law),

12

and does not violate separation of powers principles by usurping the executive's clemency power or impairing the judiciary's core functions]; *People v. Solis* (2020) 46 Cal.App.5th 762, 769, 779-780; *Cruz, supra*, 46 Cal.App.5th at p. 747; *People v. Bucio* (2020) 48 Cal.App.5th 300, 306-307, 310-314; *People v. Smith* (2020) 49 Cal.App.5th 85, 91-92; *People v. Prado* (2020) 49 Cal.App.5th 480, 483, 491-492; *People v. Johns* (2020) 50 Cal.App.5th 46, 54-55.)  We agree with the reasoning of these authorities.  As the parties are also in agreement, it is unnecessary for us to further address the issue here. The trial court erred by granting the People's motion to strike defendant's petition on the ground that Senate Bill 1437 is unconstitutional.

C.      *Relief Under Section 1170.95 as a Matter of Law*

Defendant contends that because the jury found he did not act with reckless indifference to human life and was not a major participant in the murder or the actual killer, we must vacate his murder conviction and remand the matter with directions to grant him relief under section 1170.95.

Evaluation of a section 1170.95 petition requires a multistep process:  an initial review to determine the petition's facial sufficiency; "a prebriefing, 'first prima facie review' to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief." (*Tarkington*, *supra*, 49 Cal.App.5th at p. 897; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 327-

330; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177-1178 (*Torres*), review granted June 24, 2020, S262011; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975-976.)

When conducting the first prima facie review, "the court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he [or she] was convicted of [a qualifying crime,] based on a charging document that permitted the prosecution to proceed under the natural and probable consequences doctrine or a felony-murder theory." (*Tarkington*, *supra*, 49 Cal.App.5th at pp. 898-899; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330.)  If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition without appointing counsel.  (*Tarkington*, at p. 898; *Torres*, *supra*, 46 Cal.App.5th at p. 1178; *Verdugo*, at pp. 330, 332-333; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598; *Cornelius*, *supra*, 44 Cal.App.5th at p. 58.)  If, however, the petitioner's eligibility is not established as a matter of law, the court must appoint counsel and permit briefing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (*Verdugo*, at p. 330; *Tarkington*, at p. 898.)  If the petitioner is found eligible for relief, the murder conviction must be vacated and the petitioner resentenced "on any remaining counts in the same manner as if the petitioner had not been [sic] previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).)

The People concede, and we agree, that under Senate Bill 1437 defendant is entitled to relief on his murder conviction. The limited record before us shows that defendant was convicted of a qualifying crime, first degree murder. There is no dispute that he was an aider and abettor of the attempted robbery and not the actual killer. It also appears that the prosecution could have proceeded under a felony-murder theory or the natural and probable consequences doctrine. The murder was committed in the course of an attempted robbery. Therefore, as far as the record shows, the prosecution could have advanced the theory that the killing was a natural and probable consequence of that target offense or could have relied upon the felony-murder rule because the murder occurred during commission of the attempted robbery. (See § 189, subd. (a).)

In addition, under section 1170.95, subdivision (d)(2), defendant is eligible for relief as a matter of law. That provision provides that, "[i]f there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1170.95, subd. (d)(2).)

The penalty for first degree special circumstances murder under section 190.2, subdivision (a), is either death or life without the possibility of parole. One of the enumerated special circumstances is that the murder was carried out while the defendant was engaged in, or was an accomplice in, the commission of a felony, including robbery. (§ 190.2, subd. (a)(17)(A).) Where the defendant was not the actual killer, but an aider and abettor, section 190.2 requires a further showing that the defendant was "a major

15

participant" in the crime and acted "with reckless indifference to human life." (§ 190.2, subd. (d).) If the defendant was not the actual killer, but an aider and abettor, section 190.2 also permits a special circumstances finding if the evidence shows the defendant's "intent to kill." (§ 190.2, subd. (c).)

Here, the jury found not true the special circumstance allegation that the murder occurred during the commission of burglary and attempted robbery. Because the jury found, in rejecting the special circumstance allegation, that defendant was not a major participant who acted with reckless indifference to human life, defendant is entitled to relief under Senate Bill 1437. (*People v. Ramirez* (2019) 41 Cal.App.5th 923, 932 (*Ramirez*) [section 1170.95, subdivision (d)(2), "impos[es] a mandatory duty on the court to vacate defendant's sentence and resentence him whenever there is a prior finding of this court that the defendant was not a major participant in the underlying felony and did not act with reckless indifference to human life"]; see *People v. Banks* (2015) 61 Cal.4th 788, 794-803 [Supreme Court clarified what "major participant" and "reckless indifference" to human life mean for purposes of special circumstances allegations under section 190.2, subdivision (d)]; *People v. Clark* (2016) 63 Cal.4th 522, 618-622 [same].)

In sum, Senate Bill 1437 is constitutional. Additionally, defendant made the requisite prima facie showing he was entitled to relief on the murder conviction in his declaration in support of his petition. (See § 1170.95, subds. (b)(1), (c); *Ramirez*, *supra*, 41 Cal.App.5th at p. 929.) Moreover, the People acknowledge that because defendant's jury "necessarily" determined he did not act with reckless indifference to human life, his

murder conviction must be vacated under section 1170.95, subdivision (d)(2). (See

§ 1170.95, subd. (d)(2); *Ramirez*, at p. 932.) Because Senate Bill 1437 is constitutional

and section 1170.95, subdivision (d)(2), required the trial court to vacate defendant's

murder conviction and resentence him on the remaining counts, we direct the court to do

so on remand. (See *Ramirez*, at p. 933 [appellate court remanded matter to trial court

with directions to vacate the defendant's section 1170.95 petition, vacate his murder

conviction, and resentence him on the remaining counts, where it was "beyond dispute"

the defendant was not shown to have been a major participant in the underlying felony, or

to have acted with reckless indifference to human life].)

IV

DISPOSITION

The trial court's order granting the People's motion to strike defendant's

section 1170.95 petition to vacate his murder conviction is reversed. The matter is

remanded with directions for the court to grant the petition as to the murder conviction,

vacate that conviction, and resentence defendant on the remaining counts.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

17